UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ANGELA KNIGHT AGUILAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 6:13-cv-00966-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**[1]

Plaintiff Angela Knight Aguilar ("Aguilar") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Aguilar timely pursued and exhausted her administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is AFFIRMED.[2]

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Carolyn W. Colvin in the case caption above.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

**I. Factual and Procedural History**

Aguilar was a forty-five year old female at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 35). Aguilar has at least a high school education and previously worked as a plastics trimmer/packer, a poultry trimmer, and a cashier. (Tr. 35, 59-60, 206).

Aguilar filed her application for a period of disability, DIB, and SSI on February 26, 2010, alleging an initial onset date of February 5, 2010. (Tr. 76-77, 141-42, 148-55). The Commissioner denied Aguilar's application, (tr. 79-83), and Aguilar requested a hearing before an ALJ. (Tr. 94-95). After a hearing, the ALJ denied Aguilar's claim on December 15, 2011. (Tr. 9-24). Aguilar sought review by the Appeals Council, but it declined her request on March 26, 2013. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On May 22, 2013, Aguilar initiated this action. (*See* doc. 1).

**II. Standard of Review**[3]

The Court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the Court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Aguilar met the insured status requirements of the Social Security Act through June 30, 2014, and that Aguilar had not engaged in substantial gainful activity since February 5, 2010, the alleged onset date of her disability. (Tr. 14). At Step Two, the ALJ found Aguilar has the following severe impairments: disorder of the back, headaches, obesity,

hypertension, affective mood disorder, and a personality disorder. (*Id.*). At Step Three, the ALJ found Aguilar does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-17).

Before proceeding to Step Four, the ALJ determined Aguilar's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Aguilar has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), except that she can understand and remember simple, but not detailed instructions; carry out simple instructions and sustain attention to simple/preferred tasks for extended periods; would function best with her own work area/station with few distractions; would function best with a familiar repetitive work routine, but should avoid rapid changes and multiple demands; contact with the public should be non-intensive and limited; feedback should be supportive; contact with coworkers should be casual; she could adapt to infrequent, well-explained changes; contact with supervisors should be supportive and tactful; she is unable to work around unprotected heights or dangerous or moving equipment; no ladders, ropes, or scaffolds. (Tr. 17-18).

At Step Four, the ALJ determined Aguilar could perform her past relevant work as a poultry trimmer. (Tr. 31). At Step Five, the ALJ alternatively determined, based on Aguilar's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy she could perform. (Tr. 22). Therefore, the ALJ determined Aguilar has not been under a disability and denied her claim. (Tr. 23).

V. Analysis

A.     Introduction

Although the Court may reverse a finding of the Commissioner only if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Aguilar challenges the ALJ's RFC determination contending the "credible medical evidence of records establishes that the plaintiff has the residual functioning capacity for less than sedentary work on a sustained basis, suffers severe and debilitating pain and also suffers severe and debilitating emotional problems." (Doc. 8 at 6). Despite Aguilar's arguments to the contrary, substantial evidence supports the ALJ's determination Aguilar failed to demonstrate a disability.

B.     **The ALJ's RFC Finding is Supported by Substantial Evidence**

The medical evidence supports the ALJ's RFC finding. A claimant's RFC reflects the most she can do despite her limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination of an RFC is an administrative assessment based on all the evidence of how a claimant's impairments and related symptoms affect her ability to perform work-related activities. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1-2. The final responsibility for assessing a claimant's RFC rests with the ALJ, who must based the assessment on the relevant medical and other evidence. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c),

416.927(e)(2), 416.945(a)(3), 416.946(c).  Relevant medical and other evidence includes medical assessments, medical reports from treating and examining sources, and descriptions and observations of a claimant's limitations by the claimant and others.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); SSR 96-8p, 1996 WL 374184 at *5.

Aguilar points to the following specific alleged errors with the ALJ's RFC assessment. Specifically, she contends (1) Dr. Lyman, a psychologist, stated Aguilar's ability to respond appropriately to supervision, co-workers, and job pressures in a work setting may be comproimsed by her report of hallucinations; (Doc. . at 7), and (2) Dr. Zaremba's assessment identified a RFC from an exertional standpoint for less than sedentary work, some postural and manipulative limitations and significant non-exertional limitations (*id.* at 7-8).[5]  Aguilar also contends that although an x-ray of her lumbar spine showed moderate disc space narrowing at the L5-S1 level, the SSA failed to have her examined by a medical doctor.  (*Id.* at 6-7)

The medical evidence supports the ALJ's RFC finding.  As to Aguilar's psychological condition, the ALJ noted that Ruth Ann Lyman, Ph.D., conducted a consultative mental evaluation of Aguilar on June 4, 2010.  (Tr. 19, 370-73).  On examination, Aguilar was neatly dressed and interacted appropriately.  (Tr. 371).  She spoke at a normal pace and volume.  (*Id.*).  Aguilar's mood appeared anxious and negative and her affect was tense and constrained.  (Tr. 19, 371).  Dr. Lyman noted Aguilar was attentive throughout the examination.  (Tr. 371).  Aguilar's recent and remote memory was intact, and she correctly performed simple arithmetic, but her fund of information,

---

[5]  Aguilar also argues that the only assessment that provides an opinion consistent with the ALJ's RFC finding is an evaluation from H.M. Spates dated June 16, 2010.  (Doc. 8 at 10).  Although Aguilar argues M.H. Spates is not a medical doctor, she also concedes that, even if he were, the ALJ did not consider this evidence in making his determination.  (*Id.*).

concentration, focus, insight, and judgment were poor. (Tr. 371-72). Dr. Lyman noted Aguilar reported having auditory and visual hallucinations. (Tr. 19, 372). Dr. Lyman stated that while Aguilar was cooperative throughout the examination, her motivation was "inconsistent at best, if not poor." (Tr. 19, 373).

Dr. Lyman opined Aguilar could understand, carry out, and remember instructions. (Tr. 19, 373). She also opined Aguilar's ability to respond appropriately to supervision, coworkers, and job pressures in a work setting "may" be compromised by her report of hallucinations. (Tr. 373).

The ALJ gave significant weight to Dr. Lyman's opinions as the ALJ found her findings were based upon an examination and were consistent internally and with the record as a whole. (Tr. 21). *See* 20 C.F.R. §§ 404.1527.(c)(3), (4), 416.927(c)(3), (4) (noting more weight is given an opinion that is well explained and is consistent with the record); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971) (a written report by a licensed physician/psychologist who has examined the claimant may constitute substantial evidence supporting a finding by the hearing examiner adverse to the claimant). Dr. Lyman's examination and functional assessment provided substantial evidence to support the ALJ's RFC finding that Aguilar could understand, remember, and carry out simple instructions and sustain attention. (Tr. 17-19). Her examination also provided substantial evidence to support the ALJ's RFC finding that Aguilar needed mild limits on the frequency and type of contact she had with the public, co-workers, and supervisors. (*Id.*).

The ALJ also considered the opinion of Gloria Roque, Ph.D., a State agency psychological consultant who conducted an assessment of Aguilar's metnal functioning in June 2010. (Tr. 375-91). Based on her review of the record, Dr. Roque opined Aguilar could understand, carry out, and remember simple instructions and sustain attention to perform simple/preferred tasks for extended

periods. (Tr. 391). She opined Aguilar would work best with her own work area/station with few distractions; and would work best with familiar repetitive work routine, but she should avoid rapid changes and multiple demands. (Tr. 391). Dr. Roque also opined Aguilar's contact with the public should be nonintensive/limited; her feed back should be supportive; and her contact with coworkers should be casual. (Tr. 391). She opined Aguilar could adapt to infrequent, well-explained changes. (*Id.*).

The ALJ noted that Dr. Roque did not examine Aguilar, but did consider the evidence in the record. (Tr. 21, 389). The ALJ gave significant eight to Dr. Roque's assessment as it was internally consistent and consistent with the evidence as a whole. (Tr. 21). *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(I) (State agency medical and psychological consultants are highly qualified and are also experts in Social Security disability evaluation and their opinions must be considered and weighed by the ALJ); SSR 96-6p, 1996 WL 374180, at *3 (opinion from State agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources). Dr. Roque's findings are consistent with the ALJ's RFC findings, (tr. 17-18), and provide substantial evidence to support the ALJ's decision that Aguilar was not disabled. *See Forrester v. Comm'r of Soc. Sec.*, 455 Fed. Appx. 899, 902 (11th Cir. 2012) ("The ALJ clearly articulated its reasons for giving significant weight to the non-examining physicians' opinions, which it stated that their opinions were more consistent with the medical evidence.")

The ALJ further noted the record showed Aguilar's psychological symptoms were controleld when she took her medication. (Tr. 20). For example, in August 2010, Aguilar reported her Zoloft was working well. (Tr. 398). On examination, Aguilar's mood was normal. (Tr. 399). In April 2011, despite not taking her Zoloft, Aguilar's mood ws normal. (Tr. 411, 413). In September 2011,

Aguilar reported she was doing "very well" on Cymbalta. (Tr. 405). Again, her mood was found to be normal. (Tr. 406).

Aguilar cites *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988), and *Sharfarz v. Bowen*, 825 F.2d 278, 279-90 (11th Cir. 1987), and appears to argue Dr. Roque's opinion is insufficient to support the ALJ's decision. (Doc. 8 at 8-14). Those cases involve situations where the ALJ gave greater weight to the opinion of a non-examining source over a treating physician's opinion. Here, Aguilar has not submitted a treating source opinion of her functional capacities. Moreover, the ALJ's decision was not dependent solely on the report of the consultant; rather, the ALJ based his decision on the record as a whole, including the opinion evidence, treatment records, and Aguilar's reports of her daily activities. (Tr. 17-21). Accordingly, the ALJ did not err in relying on Dr. Roque's assessment. *See KDB ex rel. Bailey v. Soc. Sec. Admin., Comm'r*, 444 Fed. Appx. 365, 367 (11th Cir. 2011).

As to Aguilar's physical condition, the ALJ also noted that on December 10, 2010, Aguilar underwent a physical examination conducted by Jack Zaremba, M.D. (Tr. 20, 429-35). On examination, Aguilar had no clubbing, cyanosis, or edema of her extremities, but had some tingling and pain in her hands. (Tr. 20, 430). She had full range of motion in her back and no spasm. (Tr. 20, 430). Aguilar's grip was "5/5" (fully intact). (Tr. 430). She walked slowly and stood normally. (*Id.*).

Concurrently with the examination, Dr. Zaremba completed a medical source statement in which he opined Aguilar could lift ten pounds occasionally and five pounds frequently; sit six hours in an eight-hour day; stand or walk up to two hours in an eight-hour day; rarely bend, stoop, or push or pull with her legs; never operate motor vehicles, work with or around hazardous machinery, or

climb stairs, ladders or balance. (Tr. 434). He opined Aguilar would be unable to work due to pain. (Tr. 434-35).

With the exception of his pain assessment, the ALJ gave significant weight to Dr. Zaremba's assessment of Aguilar's limitations as he found it was internally consistent and well-explained. (Tr. 20-21). *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4); *Perales*, 402 U.S. at 401, 91 S. Ct. 1420. Dr. Zaremba's assessment provides substantial evidence to support the ALJ's RFC finding. For example, Dr. Zaremba opined Aguilar could perform sedentary work. (Tr. 434). *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (defining sedentary work). Like Dr. Zaremba, the ALJ found Aguilar should not work around dangerous or moving equipment, ladders, ropes, or scaffolds. (Tr. 18, 434).

The ALJ properly rejected Dr. Zaremba's opinion that Aguilar's pain was disabling. (Tr. 20). The ALJ was under no obligation to adopt the conclusion of Dr. Zaremba becaues he was not a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians). However, the ALJ was required to evaluate Dr. Zaremba's opinion in accordance with the regulations, which identify the factors to be considered in weighing a medical source's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (the weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairment depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source).

The ALJ rejected Dr. Zaremba's pain assessment as not supported by his own examination findings. (Tr. 20). *See* 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). For example, the ALJ noted that although Dr. Zaremba reported Aguilar's gait was slow, he also reported she had a normal stance and could squat halfway. (Tr. 20, 430). Despite complaints of pain, Dr. Zaremba report Aguilar had full range of motion in her back and no muscle spasms. (Tr. 430). Aguilar also complained of pain on full extension of her left leg. (Tr. 20, 430). Given the paucity of descriptions of severe pain by Dr. Zaremba, the ALJ properly reasoned Dr. Zaremba's examination report did not support his opinion that Aguilar had disabling pain. (Tr. 20). *See Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850 (11th Cir. 2006) (ALJ did not err by rejecting the opinion of an examining physician that was based on subjective complaints without significant clinical findings).

The ALJ also noted the medical records did not support Aguilar's allegations of pain. (Tr. 20). Physical examinations performed at Capstone Rural Health Center between February 2010 and September 2011 consistently showed her musculoskeletal examination was normal, (tr. 20-21, 258, 399, 406, 409, 412-13, 417, 419-20). In June 2010, Aguilar stated she was doing well. (Tr. 298). In March 2011, Aguilar denied feeling "tired or poorly." (Tr. 414). In July 2011, Aguilar denied any problems or concerns. (Tr. 408).

The ALJ also considered Aguilar's daily activities. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities when determining RFC). Despite Aguilar's allegations of disabling symptoms, the ALJ reasoned her daily activities were not consistent with disability. (Tr. 21, 196-200). Aguilar reported she spent time on her friend's computer, watched television, washed dishes, prepared meals, did household chores, cared hor her

friend's pets, and had no problems with personal care. (Tr. 26, 196-200). Substantial evidence supports the ALJ's RFC finding.

To the extent Aguilar argues the SSA should have order an examination by a medical doctor following her May 25, 2010 x-ray, the record includes (and the ALJ considered) medical records from Aguilar's visit to Capstone Rural Health Center on June 18, 2010. (Tr. 20, 395-99). These records indicate, that although she reported chronic pain, Aguilar reported she was doing well and denied feeling tired or poorly; hip, thigh, knee, or leg symptoms; muscle aches; or motor or sensory disturbances. (*Id.*). Aguilar's physical examination was normal with no problems noted with her musculoskeletal or neurological systems and no changes were made to her treatment or medication plan. (*Id.*). Accordingly, Aguilar's contention the SSA should have ordered a physical examination is without merit.

> **C. To the Extent the ALJ Found Aguilar Could Perform Her Past Relevant Work, That Finding is Inconsistent with the RFC but is Harmless Error**

The ALJ's finding that Aguilar could perform her past relevant work as poultry trimmer is inconsistent with his finding that she was limited to sedentary work. The VE testified a person who is limited to sedentary work could not perform Aguilar's past relevant work. (Tr. 61). Any error here, however, was harmless because, upon proper questioning, the VE identified sedentary work Aguilar could perform, (tr. 60-62), and the ALJ found that considering her age, education, work experience and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that Aguilar could perform. (Tr. 22).

Substantial evidence supports the ALJ's RFC finding and hypothetical questions to the VE, and Aguilar fails to prove she cannot perform the jobs identified by the VE. *See Doughty v. Apfel*,

245 F.3d 1274, 1278 n.2 (11th Cir. 2001) (noting the claimant must prove he is unable to perform the jobs the Commissioner lists); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (same). Aguilar fails to prove she is more limited than the ALJ found. The ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence. *See Phillips*, 357 F.3d at 1240 n.8. The ALJ's findings provide a thorough and detailed discussion of Aguilar's medical history of record, testimony, and the record as a whole. The ALJ's consideration of Aguilar's impairments is consistent with the applicable regulations and case law and substantial evidence supports his conclusion Aguilar was not disabled within the meaning of the Social Security Act.

## VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is AFFIRMED and this action will be DISMISSED WITH PREJUDICE. A separate order will be entered.

DONE this 2nd day of June, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE